**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

**v.**

**Roland KING, Appellee.**

No. 7055.

Court of Civil Appeals of Texas.

Amarillo

May 1, 1961.

Rehearing Denied May 29, 1961.

Howard, Moore & Armstrong, Lubbock, for appellant.

Splawn & Maner, Lubbock, for appellee.

DENTON, Chief Justice.

This is a workmen's compensation case in which a judgment was rendered for the claimant for total and permanent disability. The judgment was based on a jury verdict and the insurance carrier perfected this appeal. Appellant's primary contention is that the trial court committed error in refusing to accept the first answers to the special issues on the ground some of the answers were in conflict, and also in orally instructing the jury as to the conflict. Appellee takes the position the first answers to the special issues were in fact in conflict, and that the oral instruction was harmless. There is no contention that the verdict is not supported by the evidence.

The record reveals that after deliberating some one and one-half hours the jury reached a verdict and returned it to the judge in open court. The judge then read over the special issues and the jury's answers thereto. Neither the issues nor the answers were read aloud by the judge, and it is undisputed that the attorneys for both parties did not know how the issues were first answered. After silently reading the issues and the answers, the court orally instructed the jury as follows:

"Ladies and Gentlemen of the Jury: There is a conflict in your answers to Special Issue No. 9 and your prior issues. Better let you retire and see if you can straighten that out."

Whereupon the jury again retired and shortly thereafter returned their verdict in open court. The record shows the jury changed their answers to Special Issues Nos. 6 and 8, and that they erased answers to Issues Nos. 7 and 9, which they had previously answered. The court then accepted the verdict and rendered judgment thereon.

The record includes a Bill of Exception prepared by the trial judge after the Bill of Exception submitted by appellant's counsel was found to be incorrect by the judge and appellee's counsel. The Bill certifies that the jury's first answers found the claimant to have received an accidental injury as an employee of Brown Supply Company, and that such injury was sustained in the course of his employment. In answers to Special Issues Nos. 4 through 7 the jury found the claimant received temporary total incapacity for a period of 312 weeks beginning November 17, 1959, the date of the injury. In response to Special Issue No. 8 they found he sustained partial incapacity. Special Issue No. 9 read as follows:

"On what date, if any, do you find from a preponderance of the evidence that such partial incapacity, if any, began?

"Answer by giving the date, if any."

According to the judge's Bill of Exception, the jury answered this question:

"312 starting after Nov. 17, 1959."

In answer to Special Issue No. 10, the jury found the partial incapacity to be permanent. After reviewing these answers the trial court orally instructed the jury, as set out above.

After further deliberation the jury again returned their verdict into open court. The record shows the jury changed their answers to the extent that they found the claimant totally and permanently disabled. These answers were read aloud and attorneys of both parties wrote these answers on their copies of the charge. The trial court accepted this verdict and in due time discharged the jury.

■ Appellant's first point of error complains of the trial court's refusal to accept the jury's first answers on the premise the answer to Special Issue No. 9 was in conflict with some of the prior answers. Appellant contends there was no conflict, and that it is reversible error for the trial court to instruct the jury to the effect there is a conflict in some of their answers when in fact there is no irreconcilable conflict. However, in our opinion whether or not there was a conflict is not the question presented here. The question of whether or not a jury's answers to special issues are in conflict presents a matter of procedural or adjective law rather than of substantive law. Casualty Ins. Co. of California v. Salinas, Tex., 333 S.W.2d 109. We think it is also well settled that a procedural error must be preserved by timely action by the party complaining. Lewis v. Texas Employers' Ins. Ass'n, 151 Tex. 95, 246 S.W.2d 599. The court in the latter case points out that this is true because a trial judge can usually correct his procedural errors if they are brought to his attention.

■ At least one of appellant's counsel was in the courtroom on both occasions when the jury reported. Counsel did not request to see the charge on which was written the jury's answers, and made no objection to the court's action at the time the jury first reported, or at any time until several days after the jury had been discharged. One of appellant's counsel testified on the hearing for their motion to declare a mistrial that he inspected the verdict immediately after the jury was discharged, but no objection was made at that time. It is uncontradicted that this alleged error was not brought to the court's attention until approximately one week after the verdict had been returned and accepted, and filed of record. We therefore conclude it was incumbent upon appellant to preserve the error by timely objecting to the alleged error of the trial court. We also think appellant failed to preserve the error for review by the appellate court. Appellant contends it had no opportunity to level an objection to the trial court's action and did not have the necessary information to make a proper objection. We do not agree. Even though the trial court did not read the first jury answers aloud or invite counsel to examine the verdict, we are of the opinion counsel could have had access to that information if a proper request had been made. Nothing in the record suggests they were not allowed to examine the verdict. Additional time was available for proper objections while the jury was deliberating the second time and up to the time they were discharged. It was appellant's duty to timely bring to the court's attention any alleged errors of a procedural nature. They clearly did not do so. Lewis v. Texas Employers' Ins. Ass'n, supra.

[4] Appellant next complains of the fact the trial court's instruction to the jury concerning conflicts of their answers was oral and not in writing, as required by Rule 295, Texas Rules of Civil Procedure. The Supreme Court in Denbow v. Standard Acc. Ins. Co., 143 Tex. 455, 186 S.W.2d 236, has determined this question contrary to appellant's contention. There a similarly worded oral instruction was given to the jury. The Supreme Court held the giving of the oral instruction was not error, and held that Rule 434, T.R.C.P., must be read in connection with Rule 295. Here, as in the Denbow case, the oral instruction was short, easily understood and was not an instruction on the law in the case. The instant case further coincides with the Denbow case in that counsel for both parties were present and the exact words of the judge were preserved. We see nothing that prevented appellant from making a proper presentation of this alleged error to the appellate court. It is to be further noted that the appellant made no timely objection to the court's oral instruction. We therefore overrule appellant's point of error No. 2.

■ The appellant next complains of the trial court's definition of "total incapacity" given in the charge to the jury. The court defined total incapacity as follows:

" 'Total incapacity' as used in this charge, does not imply an absolute disability to perform any kind of labor, but a person disqualified for performing the usual tasks of a workman to such an extent that he is unable to procure and retain employment is ordinarily regarded as being totally incapacitated or totally disabled."

This exact definition was recently approved by this court in Texas Employers' Ins. Ass'n v. McNeely, 342 S.W.2d 767 (error refused, n. r. e.). This is a standard definition of that term and has been approved many times by our Supreme Court and all Courts of Civil Appeals. See Texas Employers' Ins. Ass'n v. Brock, Tex.Com.App., 36 S.W.2d 704; Kemper v. Police & Firemen's Ins. Ass'n, Tex.Com.App., 44 S.W.2d 978; Texas Employers' Ins. Ass'n v. Mallard, Tex. Com.App., 143 Tex. 77, 182 S.W.2d 1000 (opinion adopted).

■ Appellant concedes the definition in question here has been widely used and approved by our Supreme Court, however it contends the amendment to Article 8306, Sec. 11, Vernon's Tex.Civ.St., in 1957 requires a change in the previously approved definition. Appellant cites no case in support of this contention, and we are unable to agree with it. The 1957 amendment simply raised the maximum weekly compensation rate from $25 to $35 per week and added the following phrase:

"Compensation for all partial incapacity resulting from a general injury shall be computed in the manner provided in this Section, and shall not be computed on a basis of a percentage of disability."

This amendment deals with the method of computing compensation for partial incapacity resulting from a general injury, and in our opinion does not require a change in the previously approved definition of "total incapacity."

■ Appellant further complains of the trial court permitting claimant's wife to testify that claimant's injury and attending work and worry caused the premature birth of her child. On direct examination the wife described the work her husband attempted to do for a time for Singer Sewing Machine Company selling sewing machines and vacuum cleaners. She testified that loading and unloading of these appliances from an automobile was required in his work and she testified:

"I always done the loading and unloading and it caused me to have a sixth month baby."

Although the last clause of the quoted statement was not responsive, appellant's attorney did not object to the testimony here complained of until the direct examination of the witness was concluded. The absence of a timely objection and the failure to show any prejudice as a result of the statement, leads us to the conclusion the point of error is without merit.

We are of the opinion the record reflects no reversible error. The judgment of the trial court is affirmed.